Not for Publication

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| LETTY BIANCHI,<br><br>Plaintiff,<br><br>v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>Defendant. | Civil Action No. 16-2036 (ES)<br><br>OPINION |

**SALAS, DISTRICT JUDGE**

Before the Court is an appeal filed by Letty Bianchi ("Plaintiff") seeking review of Administrative Law Judge Beth Shillin's ("ALJ" or "ALJ Shillin") decision denying Plaintiff's application for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under Title II and Title XVI of the Social Security Act (the "Act"), respectively. The Court has subject matter jurisdiction under 42 U.S.C. §§ 405(g) and 1383(c)(3). The Court decides this matter without oral argument. *See* Fed. R. Civ. P. 78(b). For the reasons set forth below, the Court AFFIRMS the Commissioner's decision.

**I.     BACKGROUND**

On June 18, 2014, Plaintiff filed a Title II application for DIB and a Title XVI application for SSI, alleging disability beginning January 4, 2011. (D.E. No. 5, Administrative Record ("Tr.") at 26). These claims were denied initially on September 22, 2014, and again upon reconsideration on January 28, 2015. (*Id.*). On February 5, 2015, Plaintiff filed a written request for a hearing before an Administrative Law Judge. (*Id.*).

On July 14, 2015, Plaintiff appeared and testified at a hearing in Newark, New Jersey. (*Id.*). Jacki L. Wilson, a vocational expert, also appeared at the hearing. (*Id.*). The ALJ issued an

1

unfavorable decision on December 10, 2015. (*Id.* at 20). Thereafter, Plaintiff requested an Appeals Council review, which was denied on February 19, 2016. (*Id.* at 1).

On April 13, 2016, Plaintiff appealed the Commissioner's decision by filing a Complaint with this Court. (D.E. No. 1). The parties briefed the issues raised by Plaintiff's appeal. (*See* D.E. No. 12, ("Pl. Br."); D.E. No. 13, ("Def. Br.")). The matter is now ripe for resolution.

## II. LEGAL STANDARD

### A. Standard for Awarding Benefits

To be eligible for DIB under Title II and SSI under Title XVI of the Act, a claimant must establish that she is disabled as defined by the Act. *See* 42 U.S.C. §§ 423 (Title II), 1382 (Title XVI). A claimant seeking DIB must also satisfy the insured status requirements set forth in § 423(c). Disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than [twelve] months." *Id.* § 423(d)(1)(A). A claimant's physical or mental impairment(s) must be "of such severity that [she] is not only unable to do [her] previous work but cannot, considering [her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." *Id.*

The Act has established a five-step sequential evaluation process to determine whether a claimant is disabled. 20 C.F.R. § 404.1520(a)(4). If at any point in the sequence the Commissioner finds that a claimant is or is not disabled, the appropriate determination is made and the inquiry ends. *Id*. The burden rests on the claimant to prove steps one through four. *See Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987).[1] At step five, the burden shifts to the Commissioner. *Id.*

---

[1] Unless otherwise indicated, all internal citations and quotation marks are omitted, and all emphasis is added.

2

***Step One.*** At step one, a claimant must demonstrate that she is not engaging in any substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i). Substantial gainful activity is defined as significant physical or mental activities that are usually done for pay or profit. *Id*. §§ 416.972(a), (b). If a claimant engages in substantial gainful activity, she is not disabled under the regulation, regardless of the severity of her impairment or other factors such as age, education, and work experience. *Id*. § 404.1520(b). If a claimant demonstrates she is not engaging in substantial gainful activity, the analysis proceeds to the second step.

***Step Two***. At step two, a claimant must demonstrate that her medically determinable impairment or the combination of her impairments is "severe." *Id*. § 404.1520(a)(4)(ii). A "severe" impairment significantly limits a plaintiff's physical or mental ability to perform basic work activities. *Id.* § 404.1520(c). Slight abnormalities or minimal effects on a claimant's ability to work do not satisfy this threshold. *See Leonardo v. Comm'r of Soc. Sec.,* No. 10-1498, 2010 WL 4747173, at *4 (D.N.J. Nov. 16, 2010).

***Step Three***. At step three, an ALJ must assess the medical evidence and determine whether a claimant's impairment or combination of impairments meets or medically equals an impairment listed in the Social Security Regulations' "Listings of Impairments" in 20 C.F.R. Part 404, Subpart P, Appendix 1. *See* 20 C.F.R. § 404.1520(a)(4)(iii). Upon a finding that a claimant meets or medically equals a listing, a claimant is presumed to be disabled and is automatically entitled to benefits. *Id.* § 416.920(d).

When evaluating medical evidence in step three, an ALJ must give controlling weight to, and adopt the medical opinion of, a treating physician if it "is well-supported . . . and is not inconsistent with the other substantial evidence in [the] case record." *Id*. § 404.1527(c)(2). Not inconsistent does not mean that the opinion must "be supported directly by all of the other evidence

[i.e., it does not have to be consistent with all the other evidence] so long as there is no other substantial evidence that contradicts or conflicts with the opinion." *Williams v. Barnhart,* 211 F. App'x 101, 103 (3d Cir. 2006). Even where the treating physician's opinion is not required to be given controlling weight, the opinion is not necessarily rejected and may still be entitled to deference "depending upon the extent to which supporting explanations are provided." *Plummer v. Apfel*, 186 F.3d 422, 429 (3d Cir. 1999).

If there is conflicting medical evidence, "the ALJ may choose whom to credit but cannot reject evidence for no reason or for the wrong reason." *Morales v. Apfel*, 225 F.3d 310, 317 (3d Cir. 2000). "In choosing to reject the treating physician's assessment, an ALJ may not make speculative inferences from medical reports and may reject a treating physician's opinion outright only on the basis of contradictory medical evidence and not due to his or her own credibility judgments, speculation or lay opinion." *Id.*

***Step Four***. If a claimant is not found to be disabled at step three, the analysis continues to step four, in which the ALJ determines whether the claimant has the residual functional capacity ("RFC") to perform her past relevant work. 20 C.F.R. § 416.920(a)(4)(iv). If a claimant lacks the RFC to perform any work she has done in the past, the analysis proceeds. *See id.* § 416.920.

***Step Five***. In the final step, the burden shifts to the Commissioner to show that there is a significant amount of other work in the national economy that the claimant can perform based on her RFC and vocational factors. *Id.* § 404.1520(a)(4)(v).

**B. Standard of Review**

The Court must affirm the Commissioner's decision if it is "supported by substantial evidence." 42 U.S.C. §§ 405(g), 1383(c)(3); *Stunkard v. Sec'y of Health & Human Servs.*, 841 F.2d 57, 59 (3d Cir. 1988). "Substantial evidence does not mean a large or considerable amount

of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999) (quoting *Pierce v. Underwood*, 487 U.S. 552, 565 (1988)). Although substantial evidence requires "more than a mere scintilla, it need not rise to the level of a preponderance." *McCrea v. Comm'r of Soc. Sec.*, 370 F.3d 357, 360 (3d Cir. 2004). While failure to meet the substantial evidence standard normally warrants remand, such error is harmless where it "would have had no effect on the ALJ's decision." *Perkins v. Barnhart*, 79 F. App'x 512, 515 (3d Cir. 2003).

The Court is bound by the ALJ's findings that are supported by substantial evidence "even if [it] would have decided the factual inquiry differently." *Hartranft*, 181 F.3d at 360. Thus, the Court is limited in its review because it cannot "weigh the evidence or substitute its conclusions for those of the fact-finder." *Williams v. Sullivan*, 970 F.2d 1178, 1182 (3d Cir. 1992).

Regarding the ALJ's assessment of the record, the Third Circuit has stated, "[a]lthough the ALJ may weigh the credibility of the evidence, he must give some indication of the evidence which he rejects and his reason(s) for discounting such evidence." *Burnett v. Comm'r of Soc. Sec.,* 220 F.3d 112, 121 (3d Cir. 2000). The Third Circuit has noted, however, that "*Burnett* does not require the ALJ to use particular language or adhere to a particular format in conducting his analysis. Rather, the function of *Burnett* is to ensure that there is sufficient development of the record and explanation of findings to permit meaningful review." *Jones v. Barnhart*, 364 F.3d 501, 505 (3d Cir. 2004).

### III. ALJ SHILLIN'S DECISION

At step one of the analysis, ALJ Shillin determined that Plaintiff had not engaged in substantial gainful activity since January 4, 2011, the alleged onset date. (Tr. at 28).

At step two of the analysis, ALJ Shillin determined that Plaintiff had the following severe impairments: asthma; sleep apnea; migraine headaches; obesity; anxiety; and depression. (*Id.* at 28-31). ALJ Shillin determined that these impairments were severe under the Regulations because, when "considered either individually or in unison, [they] more than minimally [a]ffect the claimant's . . . abilities to do one or more basic work activities." (*Id.* at 31). ALJ Shillin also noted that the record indicated the impairments lasted at a "severe level for a continuous period of 12 months or more." (*Id.* at 28).

ALJ Shillin found that Plaintiff had the following non-severe impairments: glaucoma; hypertension; diabetes mellitus; numbness in the fingers and arms; and bilateral tendonitis. (*Id.* at 28-31). ALJ Shillin determined that these impairments were non-severe because they "do not minimally [a]ffect the claimant's mental and physical abilities to do one or more basic work activities." (*Id.* at 28-29). For each non-severe impairment, ALJ Shillin analyzed the evidence in the record and explained the basis for her determination. (*See generally id.* at 28-31).

At step three, ALJ Shillin determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments. (*Id.* at 31). ALJ Shillin stated that "particular scrutiny was given to the Claimant in light of listings in sections 1.02, 2.00, 3.00, 12.04, and 12.06." (*Id.*).

At step four, ALJ Shillin determined that, after careful consideration of the entire record, Plaintiff has an RFC to perform "medium work" with the specific limitations that Plaintiff cannot have "contact with environmental pollutants or temperature extremes" (due to her asthma) and would be limited to performing "frequent handling as well as to simple, routine and repetitive tasks" (due to her sleep apnea, migraine headaches, depression, and anxiety). (*See id.* at 33-37). The ALJ concluded that after careful consideration of all symptoms, Plaintiff's "statements

concerning the intensity, persistence, and limiting effects of these symptoms are not entirely credible." (*Id.* at 34).

At step five, ALJ Shillin determined that, based on Plaintiff's record as well as the testimony of the vocational expert, there was a significant number of jobs available nationally, including meat clerk, counter supply worker, and machine feeder. (*Id.* at 38).

Accordingly, the ALJ found that Plaintiff had not been disabled as defined by the Act from January 4, 2011, through the date of the decision. (*Id.* at 39).

## IV. DISCUSSION

On appeal, Plaintiff asks the Court to reverse the Commissioner's final decision and award Plaintiff benefits. (Pl. Br. at 27). Alternatively, Plaintiff asks the Court to remand this case to the Commissioner for a new hearing and a new decision. (*Id.* at 27-28). *First*, Plaintiff argues that the ALJ did not conduct a full RFC assessment. (*Id.* at 21). In particular, Plaintiff contends that the ALJ "failed to consider and explain [her] reasons for discounting all of the evidence regarding [Plaintiff's] pain in her upper extremities, lower extremities and spine." (*Id.*). Plaintiff also avers that the ALJ failed to discuss how Plaintiff's obesity affected her pain levels. (*Id.* at 24). *Second*, Plaintiff argues that the ALJ should not have found Plaintiff capable of performing "medium work." (*Id.*). For the reasons set forth below, the Court rejects Plaintiff's arguments.

### A. The ALJ Conducted a Full and Proper RFC Assessment

The Court is satisfied that ALJ Shillin considered all of Plaintiff's symptoms and the relevant objective evidence in finding that Plaintiff had the RFC to perform "medium work" as defined by the Act. (Tr. at 33). Regarding Plaintiff's complaints of pain in her upper extremities, lower extremities, and spine, ALJ Shillin noted that "the findings consistently show full strength, reflexes, and sensation in all extremities." (*Id.* at 34). In particular, the ALJ relied on a September

7

2014 consultative examination that assessed Plaintiff's upper extremities, lower extremities, and spine. (*Id.* at 30). For Plaintiff's upper extremities, the examination showed "normal shoulders, elbows, wrists and small joints of the hands as well as a normal grip." (*Id.*). For Plaintiff's lower extremities, the examination showed "normal hips, knees and ankles." (*Id.*). For Plaintiff's spine, the examination showed "normal range of motion of the cervical and lumbar spine as well as normal straight leg raising bilaterally." (*Id.*).

In addition, ALJ Shillin relied on a DDS determination that Plaintiff "had a normal gait/station, full range of motion of the cervical and lumbar spine, negative straight leg raising, normal grip, normal lower extremities and no focal motor or sensory deficits." (*Id.*). ALJ Shillin also noted that Plaintiff's most recent "[e]xamination of the extremities showed no clubbing, cyanosis or dema." (*Id.*). Furthermore, during a March 2015 follow-up visit with her primary care physician, Plaintiff "denied joint pain, muscle weakness and joint deformity" and indicated "no headaches, no weakness, no tingling sensation and no abnormal movements." (*Id.* at 30-31).

To be sure, ALJ Shillin considered Plaintiff's subjective complaints of pain in her upper extremities, lower extremities, and spine, but found that Plaintiff's statements about the intensity, persistence, and limiting effects of her symptoms were "not entirely credible." (*Id.* at 33-34). For example, ALJ Shillin noted that, "at the time [Plaintiff] testified that she can only sit for 10 to 15 minutes, she had already been sitting in the seat for well over a half hour and showed no signs of discomfort or fidgeting." (*Id.* at 34). ALJ Shillin also relied on a report from Dr. Arrington stating that Plaintiff "faked worse" during a psychological consultative examination, meaning she intentionally performed poorly during the assessment. (*Id* at 36). Specifically, Dr. Arrington reported that Plaintiff's memory was impaired, but "she was faking worse as she failed to recall any of 3 objects immediately." (*Id.*). Plaintiff also "reported having a 10th grade education but

8

could not add 4+5" and "reported that a dog has 3 legs and indicated she did not know who the President of the United States was currently." (*Id.*). Of course, ALJ Shillin has discretion to evaluate Plaintiff's credibility and render an independent judgment in light of the medical findings and other evidence regarding the true extent of her alleged symptoms. *See Malloy v. Comm'r of Soc. Sec.,* 306 F. App'x. 761, 765 (3d Cir. 2009) ("Credibility determinations as to a claimant's testimony, regarding pain and other subjective complaints are for the ALJ to make.").

Regarding Plaintiff's complaints of pain from her obesity, Plaintiff argues that ALJ Shillin did not specifically discuss how her obesity "affected [her] pain levels." (Pl. Br. at 24). Plaintiff does not, however, point to anything in the record that suggests her obesity, in and of itself, caused her pain. (*See id.* at 21-24). Thus, Plaintiff fails to identify what evidence ALJ Shillin overlooked when assessing Plaintiff's pain levels associated with her obesity. *See Shinseki v. Sanders*, 556 U.S. 396, 409 (2009) ("[T]he burden of showing that an error is harmful normally falls upon the party attacking the agency's determination."). To the extent Plaintiff contends that her obesity causes her pain in her upper extremities, lower extremities, and spine, the Court finds, for the reasons discussed above, that ALJ Shillin appropriately considered such complaints in view of the objective medical evidence when determining Plaintiff's RFC. *See Schaudeck v. Comm'r of Soc Sec.*, 181 F.3d 429, 433 (3d Cir. 1999) (The ALJ may reject subjective complaints, for example, if they are not credible in light of the other evidence of record.").

Although Plaintiff contends that "[t]he ALJ failed to consider and explain [her] reasons for discounting all of the evidence regarding Ms. Bianchi's pain in her upper extremities, lower extremities and spine," for the reasons discussed above, her argument is unpersuasive. (Pl. Br. at 22). To support her argument, Plaintiff cites *Bryan v. Commissioner of Social Security*. 383 Fed. App'x 140, 148-51 (3d Cir. 2010). But the instant case is distinguishable from *Bryan*.

In *Bryan*, the Third Circuit identified two problems with the Administrative Law Judge's ("ALJ Abruzzo") RFC analysis with respect to the appellant's degenerative disc disease: (1) he failed to properly consider the appellant's testimony regarding daily activities; and (2) he failed to address medical evidence that directly contradicted his conclusions that the appellant did not suffer pain. 383 Fed. App'x at 149. Specifically, in his analysis, ALJ Abruzzo did not mention the appellant's additional limitations, as well as activities that the appellant explicitly stated he could not perform. *Id.* Furthermore, ALJ Abruzzo focused on medical records regarding the appellant's back condition *prior to* his lumbar surgery but did not cite post-surgery medical evidence, which contradicted the ALJ's conclusion that the appellant did not suffer pain. *Id.* at 149-50. Thus, the Third Circuit reversed ALJ Abruzzo's decision on this single factual finding for failing to properly address the subjective and objective evidence in his RFC analysis, but it upheld the decision in all other respects. *Id.* at 151.

Here, as discussed above, ALJ Shillin considered both the objective medical evidence and Plaintiff's testimony in her RFC analysis. (*See* Tr. at 33, 36). The ALJ considered the symptoms Plaintiff alleged due to "high blood pressure, asthma, pain and numbness in her fingers/arms, sleep disorder, anxiety, chest and leg pain, depression and glaucoma." (Tr. at 33). The ALJ also detailed Plaintiff's statements with specificity, including Plaintiff's difficulty in walking more than one block, sitting for more than 10 to 15 minutes, and lifting a gallon of milk. (Tr. at 33-34). Furthermore, the ALJ did not fail to address the medication Plaintiff took for her diabetes and breathing difficulties or the x-rays of her knees, which indicated arthritis. (*Id.*).

"After careful consideration of the evidence," the ALJ found that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms," but she determined that the "intensity, persistence and limiting effects of these symptoms [were] not

entirely credible." (Tr. at 34). In other words, in reconciling the Plaintiff's subjective allegations of pain with the objective medical evidence, including medical reports from September 2014 and March 2015, the ALJ determined that Plaintiff's allegations lacked credibility. (*See* Tr. at 418-26, 432, 434, 436, 440, 462-63). *First*, the ALJ noted that "the findings consistently show full strength, reflexes, and sensation in all extremities." (Tr. at 34). Moreover, while Plaintiff testified that she could only sit for 10 to 15 minutes, she had been seated "for well over a half hour and showed no signs of discomfort or fidgeting." (*Id.*). *Second*, with respect to Plaintiff's November 2012 allegations of chest pain, "medical imaging showed no active disease in the chest with clear lung fields. Examination showed no rales, rhonchi, wheezes or rubs, with normal breath sounds, equal bilaterally." (*Id.*). *Third*, during her most recent medical examination in March 2015, Plaintiff "denied joint pain, muscle weakness and joint deformity," and reported no complaints of sleep apnea or headaches. (*Id.* at 30, 35). *Finally*, with respect to Plaintiff's obesity, the ALJ acknowledged "its possible effects on [Plaintiff's] ability to work," but observed that "[Plaintiff's] file does not contain evidence indicating that her obesity alone has caused her to be unable to work, nor does it show that in conjunction with her asthma, sleep apnea or migraine headaches, it has disabled her." (*Id.* at 35).

Thus, ALJ Shillin considered Plaintiff's allegations of pain, but doubted their credibility with respect to intensity, persistence, and limiting effects, when viewed in light of the objective evidence on the record. (Tr. at 33-36). Furthermore, ALJ Shillin relied on the most recent medical examinations (i.e., from March 2015) and Plaintiff's testimony in making her determination.

Accordingly, the Court finds that ALJ Shillin conducted a full and proper RFC determination.

## B. Substantial Evidence Supports the ALJ's RFC Determination that Plaintiff Can Perform Medium Work

The RFC refers to the most a claimant can do despite her limitations. 20 C.F.R. §§ 404.1545(a), 416.945(a); SSR 96–8p, 1996 WL 374184, at *1-2. When determining a claimant's RFC, the ALJ has a duty to consider all evidence before him, *Plummer*, 186 F.3d at 429, but the ALJ is only required to include a claimant's "credibly-established limitations," *Rutherford v. Barnhart*, 399 F.3d 546, 554 (3d Cir. 2005). "The ALJ—not treating or examining physicians or State agency consultants—must make the ultimate disability and RFC determinations." *Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 361 (3d Cir. 2011) (citing 20 C.F.R. §§ 404.1527(e)(1), 404.1546(c)).

Here, ALJ Shillin determined that Plaintiff was able to perform "medium work" with the following specific limitations: Plaintiff cannot have "contact with environmental pollutants or temperature extremes and is limited to frequent handling as well as to simple, routine, and repetitive tasks." (Tr. at 33). In making this RFC determination, ALJ Shillin stated that, "despite evidence demonstrating that [Plaintiff] has suffered from a medically determinable 'severe' impairment, the evidence also establishes that [Plaintiff] retains the capacity to function adequately to perform many basic activities associated with work." (*Id.* at 36). ALJ Shillin further noted that the "findings of the DDS state agency consultants are consistent with the determination that [Plaintiff] is capable of significant work-related activities." (*Id.* at 37).

Nevertheless, ALJ Shillin found that Plaintiff's asthma, sleep apnea, migraine headaches, and obesity are severe and reduced her to work at the medium exertional level. (*Id.*). ALJ Shillin also found that Plaintiff's mental impairments (depression and anxiety) are severe and "affect her ability to concentrate, persist and keep pace." (*Id.*). In light of Plaintiff's mental impairments, the ALJ limited Plaintiff's RFC to "simple, repetitive and routine work." (*Id.*). ALJ Shillin concluded

that, "[w]hile it is reasonable to find that [Plaintiff's] alleged impairments would preclude more than the full range of work, the objective evidence does not establish that [she] would be precluded from all work activity."

Plaintiff argues on appeal that ALJ Shillin's RFC determination—specifically, her determination that Plaintiff can perform "medium work"—is not supported by substantial evidence. (Pl. Br. at 24-26). Medium work "involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds. If someone can do medium work, [he or she] can also do sedentary and light work." 20 C.F.R. § 404.1567(c). The Court finds that, under the applicable standard of review, there is substantial evidence to support the ALJ's determination that Plaintiff can perform medium work. *See Hartranft*, 181 F.3d at 360 (The Court is bound by the ALJ's findings that are supported by substantial evidence "even if [it] would have decided the factual inquiry differently"); *see also Williams v. Sullivan*, 970 F.2d 1178, 1182 (3d Cir. 1992) (The Court is limited in its review because it cannot "weigh the evidence or substitute its conclusions for those of the fact-finder").

ALJ Shillin properly supported her RFC determination with objective medical evidence, including from Plaintiff's primary care physician and consultative examiners. For example, ALJ Shillin noted that Plaintiff "has maintained 5/5 strength, intact grip, intact range of motion, intact deep tendon reflexes, intact sensation, and intact neurological functioning." (Tr. at 35). ALJ Shillin also observed that Plaintiff's medical records "consistently show full strength, reflexes, and sensation in all extremities." (*Id.* at 34). Further, she noted that "[t]esting has been negative for rheumatoid arthritis" and Plaintiff's "most recent examination showed no deformity, no clubbing, no cyanosis and no edema." (*Id.* at 31). And as stated above, during Plaintiff's most recent follow-up visit with her primary care physician, Plaintiff "denied joint pain, muscle weakness and joint

deformity" and indicated "no headaches, no weakness, no tingling sensation and no abnormal movements." (*Id.* at 30-31).

Although DDS initially determined that Plaintiff "was able to work at the light exertional level, with limitations to occasional climbing and crawling but frequent balancing, stooping, kneeling and crouching," DDS found on reconsideration that "none of [Plaintiff's] physical impairments were severe" and that she had "a normal gait/station, full range of motion of the cervical and lumbar spine, negative straight leg raising, normal grip, normal lower extremities and no focal motor or sensory deficits." (*Id.* at 37).

Accordingly, the Court finds that substantial evidence supports ALJ Shillin's determination that Plaintiff can perform "medium work" as defined under the Act.

## V. CONCLUSION

For the foregoing reasons, the Court AFFIRMS the Commissioner's decision. An appropriate Order accompanies this opinion.

*s/ Esther Salas*
**Esther Salas, U.S.D.J.**